UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCY
PADUCAH DIVISION
CASE NO. 5:12-CV-00080

COREY AND ELIZABETH FORESTER                                    PLAINTIFFS

v.

STEARNS BANK, N.A.                                               DEFENDANT

MEMORANDUM OPINION

This matter comes before the Court on cross-motions for summary judgment. (Def.'s Mot. Summ. J., Docket Number ("DN") 17; Pls.' Mot. Summ. J., DN 18.) Each party responded in opposition to the other's motion. (Def.'s Resp., DN 23; Pls.' Resp., DN 20.) The Defendant also filed a reply in support of its motion. (Def.'s Reply, DN 26.) Fully briefed, this matter is now ripe for adjudication. For all of the following reasons the Defendant's motion as to statutory penalties is **GRANTED**. The Plaintiffs' motion is **GRANTED** as to reasonable attorney's fees but is **DENIED** on all other grounds.

I.

The facts before the Court are largely undisputed. Epoch Investments received a small business loan from the Defendant, Stearns Bank, N.A. ("Defendant" or "bank"). The loan was secured by a mortgage on certain real property owned by Steven and Kimberly Casebeer and located at 1203 Dogwood Drive in Calloway County, Kentucky ("Dogwood property"). On April 14, 2009, the Plaintiffs, Corey and Elizabeth Forester ("Plaintiffs" or "Foresters") purchased the Dogwood property. As part of the transaction, the Foresters tendered $70,678.80 in satisfaction of the mortgage held by the Defendant. It is undisputed that the Foresters satisfied the outstanding balance of the mortgage at the real estate closing on April 14, 2009.

On May 14, 2009, after receiving the funds in satisfaction of the mortgage, the bank sent

1

Epoch Investments a letter confirming that the mortgage was paid in full.  Several documents were enclosed with the letter, including a "Satisfaction of Mortgage."  The letter stated that the "Satisfaction of Mortgage is an important document that will need to be recorded at your local County Recorder's office."  Apparently the bank intended for Epoch Investments to file the mortgage release.  Whatever the bank's intentions, neither it, Epoch Investments, nor the Casebeers ever filed the Satisfaction of Mortgage with the Calloway County Clerk.  Because the mortgage was not released, it remained an encumbrance on the Dogwood property despite being satisfied.

In early 2010, Matthew Hatfield ("Hatfield"), the attorney representing the Foresters during the Dogwood property transaction, discovered that the mortgage had not been released. On February 19, 2010, Hatfield sent a letter via certified mail to the bank's CEO, Norm Skalicky, requesting release of the mortgage.  The letter was sent to the bank's principal address in St. Cloud, Minnesota.  The letter noted that the Calloway County Clerk lacked any record of release and that the bank could "consider this letter [the Foresters'] official written and final notice requesting this release."  The letter also referenced pertinent Kentucky law and cautioned that failure to release the mortgage could result in substantial statutory penalties if the Plaintiffs instituted legal proceedings to obtain release.

In response to the February 19, 2010 letter, David Kahlhamer ("Kahlhamer"), the bank's Operations Manager, contacted Hatfield by phone.  That conversation resulted in an email exchange between Kahlhamer and Hatfield on February 24, 2010.  On that date, Kahlhamer sent Hatfield a copy of the May 14, 2009 letter issued to Epoch Investments, including the Satisfaction of Mortgage.  Hatfield responded that he had received Kahlhamer's email and that "[w]e will contact you with further requests/information when appropriate."

2

After February 24, 2010, there was no additional communication between the Foresters and the bank until May 21, 2012, when this action was filed in state court.[1]  In their Complaint, the Foresters sought release of the mortgage and $395,500.00 for 803 days of statutory penalties accruing between the request for release and filing the action.  On July 4, 2012, fourteen days after receiving the Complaint, the bank filed a fully effective release of the mortgage in the Calloway County Clerk's office.  Accordingly, the Foresters' only remaining claim is for nearly $400,000 in statutory penalties arising from the bank's failure to timely release the mortgage.

The Plaintiffs have not alleged any damages arising from the bank's failure to release the mortgage.  For example, they do not claim that they were denied a loan or were unable to sell the property because of the unreleased mortgage.  Rather, relying on Kentucky law, they claim that the bank was obligated to release the mortgage when satisfied.  The bank did not do so, and statutory penalties accrued.  Despite the lack of actual damages, the Plaintiffs seek statutory penalties because imposition of the penalties would promote the dual purposes underlying the law: ensuing orderly and accurate real estate records and encouraging lienholders to promptly release satisfied liens.  *See Hall v. Mortg. Elec. Registration Sys., Inc.*, No. 2010-SC-000559-DG, 2012 WL 2362358, at *6 (Ky. June 21, 2012) (discussing the purposes underlying KRS § 382.365).

## II.

Resolution of this action turns on the application of KRS § 382.365 to the facts stated above.  In general, that statute provides that a "holder of a lien on real property . . . shall release the lien . . . within thirty (30) days from the date of satisfaction."  KRS § 382.365(1).  If the lienholder does not timely release the lien, the owner of the real property is granted a private right of action to force the lienholder to comply with the statute.  KRS § 382.365(3).  Statutory

---

[1] The bank removed to federal district court on the basis of diversity jurisdiction on June 13, 2012.

penalties are also authorized against a lienholder for failure to timely release a lien.  So long as (1) the lien is satisfied, (2) the lienholder receives written notice of its failure to release the lien, and (3) it lacks good cause for not releasing the lien, "the lienholder shall be liable to the owner of the real property . . . in the amount of one hundred ($100) per day for each day, beginning on the fifteenth day after receipt of the written notice, of the violation for which good cause did not exist."  KRS § 382.365(4); *see Hall*, 2012 WL 2362358, at *3 (listing the three prerequisites for imposition of statutory penalties).  The daily penalty increases to a total of "five hundred dollars ($500) per day, for each day for which good cause did not exist after the forty-fifth day from the date of written notice."  KRS § 382.365(5).

No party disputes that the Foresters satisfied the lien on the Dogwood property.  The bank contests the other two elements that must be established prior to the recovery of statutory penalties, however.  First, it claims that the Foresters failed to comply with the notice provision contained in KRS § 382.365(4)(a) and statutory penalties cannot be imposed absent proper notice.  Second, even if receiving notice, the bank argues that it had good cause for not releasing the mortgage.  Essentially, the bank argues that Hatfield, by notifying Kahlhamer via email that "[w]e will contact you with further requests/information when appropriate," informed that bank that it need not take any further action or file the Satisfaction of Mortgage.  Should the Court find that both elements are present, the bank also argues that the equitable doctrine of laches bars the recovery of statutory penalties.  The Court considers all three arguments below.

## III.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether summary judgment is appropriate, a court must resolve

4

all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

While the substantive law of Kentucky is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Federal Rule of Civil Procedure 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)."  *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993) (abrogated on other grounds in *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010)).

Finally, "[t]he standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *Lee v. City of Columbus, Ohio,* 636 F.3d 245, 249 (6th Cir. 2011) (citation omitted).

**IV.**

The language of KRS § 382.365(4) authorizes statutory penalties only where a court finds that the lienholder (1) "received written notice of its failure to release" and (2) "lacked good cause for not releasing the lien."  The bank first argues that it is entitled to summary judgment because the Foresters did not comply with the first element, that is, they did not give the bank proper written notice of its failure to release the lien.  *See Citifinancial, Inc. v. Bratton*, No. 2011-CA-001152-MR, 2012 WL 3762432, at *5-7 (Ky. Ct. App. Aug. 31, 2012) (reversing judgment against mortgagee because the mortgagors did not strictly comply with the notice requirements of KRS § 382.365(4)(a)); *Redmond v. ARH Fed. Credit Union*, No. 2010-CA-000351-MR, 2011 WL 1812192, at *2-4 (Ky. Ct. App. May 13, 2011) (affirming dismissal of claim for statutory penalties because plaintiff did not strictly comply with notice requirement in KRS § 382.365(4)(d)).  The bank bases its argument on the text of the notice provision set forth in KRS § 382.365(4)(a).

When a corporation holds a satisfied mortgage that should otherwise be released, the mortgagor should send the corporation written notice requesting release.  As prescribed by statute:

> This written notice shall be properly addressed and sent by certified mail or delivered in person to the final lienholder or assignee as follows:
>
> (a) For a corporation, to an officer at the lienholder's principle address or to an agent for process located in Kentucky; however, if the corporation is a foreign corporation and has not appointed an agent for process in Kentucky, then to the agent for process in the state of domicile of the corporation.

KRS § 382.365(4)(a).  The bank's chief argument is that it is not a Kentucky corporation and does not have an agent for process located in Kentucky.  Therefore, the proviso in the second half of KRS § 382.365(4)(a) is triggered, and the Foresters could only properly serve written

6

notice on the bank by sending notice to the "agent for process in in the state of domicile of the corporation."   In this case, the agent for process was not the bank's CEO in St. Cloud, Minnesota, but an individual located in Albany, Minnesota.   (*See* Aff. David Kahlhamer, DN 17-1, ¶ 4.)   Accordingly, because the Foresters did not send the written notice to the bank's agent for process in accordance with the proviso, the bank did not receive proper notice and the statutory penalties for failure to release the mortgage cannot be imposed.   The Court disagrees.   As discussed below, the bank's reading of KRS § 382.365(4)(a) is too narrow and illogically constricts the manner in which foreign corporations lacking an agent for process in Kentucky can be served with written notice requesting release.

KRS § 382.365(4)(a) is subject to at least two potential readings.   Under the first reading – the one advocated by the bank – a major distinction exists between serving written notice on a foreign corporation having an agent for process in Kentucky and one that does not.[2]   So long as the corporation has an agent for process in Kentucky, the written notice can be sent to two places: (1) to an officer at the lienholder's principal address or (2) to the agent for process in Kentucky.   KRS § 382.365(4)(a).   But, should the foreign corporation lack an agent for process in Kentucky, then the proviso in KRS § 382.365(4)(a) applies and notice can only be sent to "the agent for process in the state of domicile of the corporation."   *Id.*   In other words, the bank argues that notice *cannot* be sent to "an officer at the lienholder's principal address" if the foreign corporation does not have an agent for process in Kentucky.   According to the bank, the event triggering application of the proviso – the absence of an agent for process in Kentucky – prohibits a mortgagor from serving written notice on an officer of a corporation at its principle

---

[2] The first clause in KRS § 382.365(4)(a) – "For a corporation, to an officer at the lienholder's principle address or to an agent for process located in Kentucky" – applies to Kentucky and foreign corporations equally.   The statute does not say "For a *Kentucky* corporation . . . ."   Instead, it simply says "For *a* corporation . . . ."   Therefore, any argument that the first clause only applies to Kentucky corporations is  unavailing.

place of business.  Rather, when a foreign corporation does not have an agent for process in Kentucky, the written notice may only be served on "the agent for process in the state of the domicile of the corporation."

The bank's reading of the proviso creates an arbitrary distinction in service of written notice based solely on whether a foreign corporation has an agent for process in Kentucky.  The bank's interpretation also makes it more difficult for a mortgagor to obtain release of a satisfied mortgage held by a foreign corporation lacking an agent for process in Kentucky because the mortgagor only has one option for giving notice.  It is illogical to think that Kentucky's General Assembly intended to make it harder for owners of Kentucky real property to obtain release of satisfied mortgages from these entities than Kentucky corporations or foreign corporations with an agent for process in the state.  Finally, the bank's reading of KRS § 382.365(4)(a) is clearly contrary to one of the underlying purposes of the statute, which is to effect prompt release of satisfied liens.  *See Hall*, 2012 WL 2362358, at *6.  As such, the Court declines to follow the bank's interpretation.

The second potential reading of the statute – the reading advocated by the Foresters – removes the bank's arbitrary distinction and promotes the purposes of the statute.  According to the Foresters' reading of KRS § 382.365(4)(a), when serving written notice on a foreign corporation, the notice can always be served on "an officer at the lienholder's principal address." When the corporation has an agent for process in Kentucky, the written notice can also be served on that individual.  The proviso in the second half of KRS § 382.365(4)(a) is only triggered when a foreign corporation lacks an agent for process in Kentucky.  In those circumstances, the written notice can still be served on an officer at the foreign corporation's principal address but can also be served on the foreign corporation's "agent for process in the state of domicile of the

8

corporation."   In this way, there are always two places the written notice may be served no matter the nature of the corporate entity involved.

Overall, the Court finds that the second reading of KRS § 382.365(4)(a) is the correct interpretation.  The proviso in the statute only modifies the phrase immediately preceding it, "to an agent for process located in Kentucky," and not "to an officer at the lienholder's principal address."  When a foreign corporation lacking an agent for process in Kentucky holds but has not released a satisfied mortgage, the mortgagor may serve written notice requesting release of the mortgage either "to an officer at the lienholder's principal address" or "to the agent for process in the state of domicile of the corporation."

Applying KRS § 382.365(4)(a) to the facts of the present case, the Court finds that the Foresters properly served written notice on the bank requesting release of the mortgage.  On February 19, 2010, Hatfield, on behalf of the Foresters, sent a written letter via certified mail to the bank's CEO at its principal place of business in the St. Cloud, Minnesota, requesting release of the mortgage.  This was sufficient to comply with KRS § 382.365(4)(a) because the Foresters sent notice "to an officer at the lienholder's principal address."  Although the Foresters could have also complied with the statute by sending notice to the bank's agent for process in Albany, Minnesota, this was not necessary where they sent notice under the first option.

**V.**

Next, the bank argues that even if receiving the required notice, statutory penalties cannot be imposed because, under the totality of the circumstances, it had good cause for not releasing the mortgage.  This argument derives from the text of KRS § 382.365(4), which provides that statutory penalties are only imposed if the lienholder "lacked good cause for not releasing the lien."

9

The Supreme Court of Kentucky recently addressed the "good cause" element of KRS § 382.365(4) in *Hall v. Mortg. Elec. Registration Sys., Inc.*, No. 2010-SC-000559-DG, 2012 WL 2362358, at *6 (Ky. June 21, 2012).  There, the court found that "the 'good cause' provision provides lienholders an affirmative defense to the imposition of statutory penalties." *Id.* at *4. The question of whether a lienholder has good cause for not releasing a lien "is to be determined by the totality of the circumstances" and is for the court to decide as a matter of law. *Id.*

In *Hall*, the plaintiffs granted the defendant a mortgage on real property in Laurel County, Kentucky. *Id.* at *1.  The plaintiffs eventually satisfied the mortgage and the defendant prepared a release within one week of satisfaction.  The release listed the correct mortgagor, mortgagee, and property address, but "contained the wrong mortgage book and page number of the mortgage it purported to release–a simple scrivener's error–causing the release to be ineffective." *Id.*  In the process of obtaining another mortgage on the property, the plaintiffs discovered that the defendant's mortgage had not been released and found that there was a problem with the release on record. *Id.*  They then sent the defendant written notice requesting release, but did not inform the defendant of the issue with the release on record.  The defendant searched its records and found that the release had been filed and took no further action. *Id.*  It was not aware, and the plaintiff did not make it aware, that the scrivener's error rendered the release ineffective.

The plaintiffs waited five months after serving written notice before suing the defendant for release of the mortgage.  They sought $75,000 in statutory penalties. *Id.* at *3.  The trial court and the court of appeals found that statutory penalties were inappropriate because the scrivener's error represented "good cause" for not granting the release. *Id.* at *1.  The supreme court ultimately agreed, finding that "in certain circumstances, human error can form the basis upon which 'good cause' exists for failure to timely release a lien under KRS 382.365." *Id.* at *5

(citation omitted).

In arriving at its conclusion, the court discussed the two purposes behind KRS § 382.365: "ensuring prompt action by lienholders after satisfaction of an underlying debt, and maintaining accurate property records." *Id.* at *6. Additionally, the court found that even though "the statute places no affirmative duty on borrowers to assist lenders in ensuring that accurate property records are maintained, it likewise does not permit borrowers to collect windfall judgments precipitated, in large part, by their withholding of information (albeit unintentional) which would have resolved the matter quickly." *Id.*

In the present case the record demonstrates that the bank issued a Satisfaction of Mortgage to Epoch Investments on May 14, 2009, about a month after the mortgage was satisfied. For unknown reasons, the bank did not file the release itself. Instead, it directed Epoch Investments to file the release, which it never did. The fact that the bank did not attempt to file the release itself distinguishes the present case from *Hall*. In *Hall*, the mortgagee promptly filed the release, but it was ineffective because of a scrivener's error. Here, despite promptly *preparing* the release, the bank only took the affirmative step of *filing* the release with the Calloway County Clerk, as required by KRS § 382.365, *after* the Foresters instituted this action. *See Bank of Am. v. Boone Nat'l Bank*, No. 2004-CA-002422-MR, 2006 WL 504999, at *2 (Ky. Ct. App. Mar. 3, 2006) (affirming an award of statutory penalties where the bank failed to timely file a release). The bank directed a third-party to file the release, but that direction in no way complied with the bank's obligations arising under the plain language of the statute and does not excuse the bank's failure to release the mortgage. *See* KRS § 382.365(1) (directing that "a holder of a lien," not a third-party, "shall release the lien [upon satisfaction]").

The bank also contends that representations by Attorney Hatfield in the February 24,

2010 email exchange establish that it had good cause for not releasing the lien.  In response to prior phone conversations concerning the Foresters' February 19, 2010 letter, the bank's operations manager, Kahlhamer, emailed Hatfield a copy of the release that had previously been sent to Epoch Investments on May 24, 2009.  Hatfield confirmed that he received a copy of the release and stated that "[w]e will contact you with further requests/information when appropriate."  The bank did not proceed to file the release itself because it assumed that Hatfield's statement was an indication that the issue of release had been resolved.  (*See* Aff. David Kahlhamer, DN 17-1, ¶ 9 ("Based on Mr. Hatfield's representation in his February 24, 2010, e-mail regarding contacting for further requests or information, I proceeded as though this matter was resolved and any lien release deficiencies were addressed by the documentation I provided Mr. Hatfield.")).

Even if Hatfield's final communication may be ambiguous, the Court does not find that it established good cause for the bank's failure to release the lien.  The simple fact remains that the bank never filed the proper release with the Calloway County Clerk until this action was filed. KRS § 382.365 places the burden on the lienholder to release the lien when satisfied.  *See Hall*, 2012 WL 2362358, at *6 (Schroder, J., dissenting) (disagreeing with the majority rationale because it "improperly shifts the burden of procuring a mortgage release onto the property owners instead of the mortgage company–where the statute places the burden").  Again, in *Hall*, the defendant filed an erroneous release that was made ineffective by a scrivener's error.  The plaintiffs in *Hall* knew of the error but did not inform the defendant.  The present case is factually distinguishable from *Hall*.  In *Hall*, the plaintiffs gained knowledge of the error because the bank actually filed a release, even if ultimately ineffective.  Here, there was no erroneous filing for the Foresters to discover because the bank made no filing.  It was the bank's statutory

obligation to release the mortgage once satisfied.  Absent some showing that the bank – and not some third-party at the bank's direction – filed or at least attempted to file the release, it lacks good cause for not releasing the mortgage under the facts in this case.

The circumstances before the Court are more like those in *Bank of Am. v. Boone Nat'l Bank*, No. 2004-CA-002422-MR, 2006 WL 504999 (Ky. Ct. App. Mar. 3, 2006), than *Hall*.  In August of 2001, Ronnie and Linda Cook satisfied a mortgage held by Bank of America while refinancing the loan with Boone National Bank.  *Bank of Am.*, 2006 WL 504999, at *1.  Two months after satisfaction, an officer for Boone National Bank sent written notice to Bank of America requesting release.  *Id.*  By February 2002, Bank of America still had not released the mortgage and Boone National Bank, along with the Cooks as intervening plaintiffs, sued for release and statutory penalties pursuant to KRS § 382.365.  *Id.*  Bank of America ultimately released the mortgage on April 5, 2002, approximately 144 days after receiving notice of satisfaction.  *Id.* at *1-2.  Because the release was untimely, the trial court awarded the Cooks $54,000 in statutory penalties against Bank of America.  *Id.*

On appeal, Bank of America argued than the statutory penalties should be not assessed because its high volume of business established "good cause" for not releasing the mortgage.  *Id.* at *2.  It showed that it processed an enormous volume of mortgage releases and that its system generated a release when the Cooks satisfied their mortgage.  Despite generating the release, Bank of America could not show that the release had ever been filed, and despite "whatever justification [Bank of America] may initially have had to rely on its lien-release system, that justification disappeared when [it] received . . . notice that the Cooks' lien had not been released."  *Id.*  Ultimately, the court of appeals affirmed the $54,000 award of statutory penalties to the Cooks.  *Id.* at *5.

In the present case, as in *Bank of America*, the bank generated a release shortly after the Foresters satisfied the mortgage.  But, just as in *Bank of America*, this release was never filed in the county clerk's office.  On February 19, 2010, the bank received written notice that the mortgage had not been released.  Rather than filing the release itself, as directed by the statute, the bank merely sent Hatfield a copy of the release.  At this point, the bank knew that the release had not been filed but, for some reason, repeated its initial error and assumed that another party would file the release on its behalf.  Again, this did not comply with the bank's obligation under KRS § 382.365.  Accordingly, the Court cannot find that under the totality of the circumstances the bank had good cause for failing to release the lien.

## VI.

Finally, the bank argues that even if it received written notice and lacked good cause for failing to release the mortgage, the Foresters should be barred by the equitable doctrine of laches from recovering statutory penalties.  In essence, the bank claims that the Foresters delayed the prosecution of their claims under KRS § 382.365 for the purposes of ballooning the recoverable statutory penalties.

The doctrine of laches "serves to bar claims in circumstances where a party engages in unreasonable delay to the prejudice of others rendering it inequitable to allow that party to reverse a previous course of action."  *Plaza Condominium Ass'n Inc. v. Wellington Corp.*, 920 S.W.2d 51, 54 (Ky. 1996) (citing *Kendall v. Mussman*, 247 S.W.2d 502, 503-04 (Ky. 1952)).  More fully articulated,

> "Laches" in its general definition is laxness; an unreasonable delay in asserting a right.  In its legal significance, it is not merely delay, but delay that results in injury or works a disadvantage to the adverse party.  Thus there are two elements to be considered.  As to what is unreasonable delay is a question always dependent on the facts in the particular case.  Where the resulting harm or disadvantage is great, a relative brief period of delay may constitute a defense

while a similar period under other circumstances may not.  What is the equity of the case is the controlling question.  Courts of chancery will not become active except on the call of conscience, good faith, and reasonable diligence.  The doctrine of laches is, in part, based on the injustice that might or will result from the enforcement of a neglected right.

*City of Paducah v. Gillispie*, 115 S.W.2d 574, 575 (Ky. 1938) (citations omitted).

In *Union Planters Bank, N.A. v. Hutson*, 210 S.W.3d 163 (Ky. Ct. App. 2006), the Kentucky Court of Appeals applied the doctrine of laches in the context of a claim for statutory penalties arising under KRS § 382.365.  In that case, the plaintiffs granted Union Planters a mortgage interest in certain real property on December 5, 2000.  *Hutson*, 210 S.W.3d at 165.  In August of 2001, the plaintiffs refinanced the loan and paid off the remaining balance of the mortgage held by Union Planters.  *Id.*  For reasons not revealed in the case, the mortgage was not released.  *Id.*  Two years later, one of the plaintiffs' daughters sent written notice to Union Planters requesting release of the mortgage.  *Id.*  Thereafter, the plaintiffs did not communicate with Union Planters or seek release of the mortgage until April 14, 2004, the date they filed suit pursuant to KRS § 382.365.  By that time, approximately 234 days had passed since the plaintiffs sent written notice, and even though they admitted that they did not have any actual damages, they sought $98,000 in statutory penalties.  *Id.* at 165, 166.  The trial court awarded the penalties as requested and Union Planters appealed.

On appeal, Union Planters argued that defense of laches barred the award.  Discussing laches, the court of appeals stated:

[T]he concept [of laches] . . . implies that the landowner has a duty to act reasonably and in good faith.  For example, the landowner might have an obligation to follow up on the [written notice sent by the plaintiffs' daughter] if the lien is not released in a reasonable time.  That is undoubtedly what would happen if there were no statute or the landowner were experiencing real damages.  Certainly no less should be required where the statute has, in effect, specified liquidated damages.

*Id.* at 167.  The court also went on to discuss the duty of good faith that flowed between the

15

parties:

> Placing a duty to act in good faith on the landowner has several advantages.  First and foremost, it saves [KRS § 382.365] from being unconstitutional.  Second, the parties are pushed to act in a manner consistent with that envisioned by the Legislature when it increased the [statutory penalties in the 2000 amendments to KRS § 382.365].  Undoubtedly, the Legislature sought to protect the land owner from a mortgage holder, having gotten its money back, callously ignoring the plea of its former debtor to have his property returned.  It probably did not envision a land owner who is suffering no damage sleeping on his rights solely to balloon the penalty.  And lastly, allowing the landowner to sleep on his rights actually undercuts one objective of the legislature sought to promote, accurate public real estate records.  By discouraging the landowner from notifying the lien holder a second time, the statute actually postpones the day when the records are to be corrected.

*Id.* at 168.  While analyzing "good cause," the Kentucky Supreme Court in *Hall* also discussed a plaintiff's obligations under KRS § 382.365:

> [A]lthough the statute places no affirmative duty on borrowers to assist lenders in ensuring that accurate property records are maintained, it likewise does not permit borrowers to collect windfall judgments precipitated, in large party, by their withholding of information . . . which would have resolved the matter quickly.  The statute was clearly designed to penalize unacceptable behavior, not to penalize those that take further action to resolve the matter but overlook another fact uncommunicated.  Adopting the position urged by [the plaintiffs] would encourage such vague notices, while allowing statutory per diem penalties to accrue before filing suit.  We decline to adopt such a position for a statute whose primary purpose is to get the matter resolved as quickly as possible.

*Hall*, 2012 WL 2362358, at *6.

Upon consideration of *Hutton* and *Hall*, the Court finds that the doctrine of laches bars the Foresters from collecting statutory penalties in this case for two reasons.  First, the Foresters' prosecution of this action was unreasonably delayed.  On February 19, 2010, Hatfield, on behalf of the Foresters, notified the bank that the mortgage had not been released.  The last communication between Hatfield and the bank occurred on February 24, 2010.  After that, no other communication between the parties occurred until 817 days later when, on May 21, 2012, the plaintiff filed suit against the bank.  The Foresters argue that whether the delay was

unreasonable is a question of fact that precludes summary judgment.  It is undisputed, however, that the Forester made no attempt to communicate with the bank or otherwise resolve the release issue for more than 800 days.  Furthermore, they have provided no explanation for their delay other than to argue that they had no burden to act under KRS § 382.365.  While they may have had no statutorily imposed duty to act, their delay did nothing but work prejudice on the bank and balloon the statutory penalties.  Upon the facts of this case there is no genuine dispute that the Foresters' delay was unreasonable as a matter of law, making summary judgment appropriate.  Furthermore, by delaying the prosecution, the Foresters' actions worked against one of the underlying purposes of KRS § 382.365, the orderly and accurate keeping of real property records. *See Hutson*, 210 S.W.3d at 168.

Second, the Court finds that the doctrine of laches is applicable because the Foresters have suffered no actual damages.  This is an undisputed fact.  In *Hall*, the Kentucky Supreme Court clearly stated that KRS § 382.365 "does not permit borrowers to collect windfall judgments[.]"  *Hall*, 2012 WL 2362358, at *6.  Here, the bank should have released the mortgage when the Foresters tendered $70,678.80 in satisfaction of Epoch Investment's mortgage on the Dogwood property.  To allow the Foresters to delay in the prosecution of this action and then collect $395,5000 in statutory penalties, more than five time the amount of the underlying mortgage, is clearly inequitable when they admittedly suffered no damages.  Therefore, the Court holds that the Foresters are barred by the doctrine of laches from collecting statutory penalties in this action.

## VII.

In their Complaint, the Foresters requested release of the mortgage, statutory penalties, and reasonable attorney's fees.  Shortly after this action commenced, the bank filed a release of

the mortgage with the Calloway County Clerk.  But for the Foresters' filing of this action, it is unclear whether the satisfied mortgage would have ever been released.  For this reason, the Court finds that although the Foresters are barred from recovering statutory penalties, they should receive reasonable attorney's fees and expenses incurred in obtaining release of the mortgage.

> Upon proof to the court of the lien being satisfied by payment in full to the final lienholder or final assignee, the court shall enter a judgment noting the identity of the final lienholder or final assignee and authorizing and directing the master commissioner of the court to execute and file with the county clerk the requisite release or assignments or both, as appropriate.  *The judgment shall be with costs including a reasonable attorney's fee*.

KRS § 382.365(4) (emphasis added).  "The statute makes the award of attorney fees and costs separate and distinct from the award of damages."  *Redmond*, 2011 WL 1812192, at *3.  "[A] person can bring suit [under KRS § 382.365] and recover attorney fees and costs without ever providing written notice to the lienholder.  It is only after providing proper written notice to the lienholder that the statutory damages come into play."  *Id.*  Accordingly, the Foresters may recover reasonable attorney's fees even though their claim for statutory penalties is barred.

The underlying purpose of KRS § 382.365 is to ensure orderly and accurate real property records and the Foresters' attorney should receive his reasonable fees for obtaining release of the satisfied mortgage even if he dragged his feet while doing so.  Absent the commencement of this action, there is no indication that the bank would have otherwise released the mortgage.  For this reason, an award of attorney's fees is appropriate.

## CONCLUSION

This matter came before the Court on cross-motions for summary judgment.  For all of the foregoing reasons, the Defendant's motion is **GRANTED** to the extent that the Plaintiffs are prohibited from obtaining statutory penalties pursuant to KRS § 382.365.  The Plaintiffs' motion is **GRANTED**, but only to the extent that they may recover reasonable attorney's fees for

18

obtaining release of the satisfied mortgage through commencement of this action.  In all other aspects the Plaintiffs' motion is **DENIED**.

A separate order shall follow.